# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHNNY SALDATE, | 1:07-CV-00309 AWI GSA HC |
| Petitioner, | FINDINGS AND RECOMMENDATION REGARDING PETITION FOR WRIT OF HABEAS CORPUS |
| v. | |
| DERRAL ADAMS, Warden, | |
| Respondent. | |

Petitioner is a state prisoner proceeding with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. He is represented in this action by Roger S. Hanson, Esq.

**PROCEDURAL BACKGROUND**

Petitioner is currently in the custody of the California Department of Corrections pursuant to a judgment of the Superior Court of California, County of Fresno, following his conviction by plea of guilty on November 20, 1986, of second degree murder in violation of Cal. Penal Code § 187. See Respondent's Answer to Petition (hereinafter "Answer"), Exhibit 1. On December 18, 1986, Petitioner was sentenced to serve an indeterminate term of fifteen years to life in state prison with the possibility of parole. Id.

On January 23, 2006, Petitioner's fifth subsequent parole suitability hearing was held

1

before the California Board of Parole Hearings (hereinafter "Board"). See Answer, Exhibit 3. Petitioner participated in the hearing and chose to represent himself. Id. at 3. At the conclusion of the hearing, the Board denied parole and deferred rehearing for one year. Id. at 86.

Petitioner then sought relief in the state courts. Petitioner filed a petition for writ of habeas corpus in the Fresno County Superior Court, which was denied on May 9, 2006, in a reasoned opinion. See Answer, Exhibits 4, 5. He then filed a habeas petition in the California Court of Appeal, Fifth Appellate District, on June 5, 2006. See Answer, Exhibit 6. The petition was denied without comment or citation to authority on September 21, 2006. See Answer, Exhibit 7. Next, Petitioner filed a habeas petition in the California Supreme Court. See Answer, Exhibit 8. On December 13, 2006, the petition was summarily denied; Justices Kennard and Werdegar were of the opinion the petition should have been granted. See Answer, Exhibit 9.

Petitioner filed the instant petition for writ of habeas corpus on February 26, 2007, in this Court. The petition challenges the 2006 decision of the Board denying parole. Petitioner contends the Board's decision finding Petitioner unsuitable for parole was supported by no evidence, inapposite to the record, inherent in the definition of the offense, and/or irrelevant to his current suitability for parole, thereby violating his due process rights and his liberty interest in parole. He further argues the Board's continued use of the facts of his offense violates due process and the Board's procedure is contrary to statute and due process.  On June 20, 2007, Respondent filed an answer to the petition. Petitioner filed a traverse on October 12, 2007.

## FACTUAL BACKGROUND[1]

On September 26, 1986, at approximately 1:30 a.m., two Mexican males entered the 7-11 Store at 7314 N. Blackstone in an attempt to purchase some beer. The clerk at the store, Vance Kaufman, asked them for identification. When they could not produce identification, he refused to sell them the beer. There was a short exchange of words between Kaufman and the two subjects, one of whom threw food items at Kaufman. These subjects then left the store and were followed by Kaufman. A few minutes later a passerby ran into the store and told the manager that

---

[1]The information is derived from the probation officer's report of the underlying offense, which in turn was taken from the Fresno Police Department crime report. See Answer, Exhibit 2.

Kaufman was lying in the street. By the time police and paramedics arrived at the scene, Vance Kaufman was dead as a result of multiple stab wounds.

A few days following Kaufman's death the police received information through anonymous phone calls that Petitioner was the individual who had stabbed Kaufman. On September 29, 1986, Petitioner was taken into custody, and after being advised of his rights, admitted that he in fact had stabbed Kaufman. According to Petitioner, he had been drinking all evening and he and his cousin were walking to his cousin's home when two of his friends came by. His cousin Alvin and one of his friends then decided to go to the liquor store. A few minutes later, Petitioner decided that he should follow them to make sure they did not get into trouble. He followed them to the 7-11 Store. When he saw them come out of the store, he at first started to leave and go back to his cousin's house as there did not appear to be any problems. According to Petitioner, he then looked back and saw his cousin fighting with someone. Petitioner pulled out his knife and ran to where the fight was going on. He then stabbed the individual, Vance Kaufman, numerous times. After the fighting stopped, Petitioner stated that he and his friends ran from the area.

The victim, 32-year old Vance Kaufman, died at the scene of the crime. He had received multiple stab wounds including a wound to the neck injuring his jugular vein and numerous stab wounds to his right side and back.

**DISCUSSION**

I.    Standard of Review

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320 (1997), *cert. denied,* 522 U.S. 1008 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), *quoting* Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir.1996), *cert. denied,* 520 U.S. 1107 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320 (1997) (holding AEDPA only applicable to cases filed after statute's enactment). The instant petition was filed after the enactment of the AEDPA; thus, it is governed by its provisions.

1    Petitioner is in custody of the California Department of Corrections pursuant to a state
2 court judgment. Even though Petitioner is not challenging the underlying state court conviction,
3 28 U.S.C. § 2254 remains the exclusive vehicle for his habeas petition because he meets the
4 threshold requirement of being in custody pursuant to a state court judgment. Sass v. California
5 Board of Prison Terms, 461 F.3d 1123, 1126-1127 (9th Cir.2006), *citing* White v. Lambert, 370
6 F.3d 1002, 1006 (9th Cir.2004) ("Section 2254 'is the exclusive vehicle for a habeas petition by a
7 state prisoner in custody pursuant to a state court judgment, even when the petition is not
8 challenging his underlying state court conviction.'").

9    The instant petition is reviewed under the provisions of the Antiterrorism and Effective
10 Death Penalty Act which became effective on April 24, 1996.  Lockyer v. Andrade,  538 U.S. 63,
11 70 (2003).  Under the AEDPA, an application for habeas corpus will not be granted unless the
12 adjudication of the claim "resulted in a decision that was contrary to, or involved an
13 unreasonable application of, clearly established Federal law, as determined by the Supreme Court
14 of the United States" or "resulted in a decision that was based on an unreasonable determination
15 of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C.
16 § 2254(d); see Lockyer, 538 U.S. at 70-71; see Williams, 529 U.S. at 413.

17    As a threshold matter, this Court must "first decide what constitutes 'clearly established
18 Federal law, as determined by the Supreme Court of the United States.'" Lockyer, 538 U.S. at 71,
19 *quoting* 28 U.S.C. § 2254(d)(1).  In ascertaining what is "clearly established Federal law," this
20 Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as
21 of the time of the relevant state-court decision." Id., *quoting* Williams, 592 U.S. at 412. "In other
22 words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or
23 principles set forth by the Supreme Court at the time the state court renders its decision." Id.

24    Finally, this Court must consider whether the state court's decision was "contrary to, or
25 involved an unreasonable application of, clearly established Federal law." Lockyer, 538 U.S. at
26 72, *quoting* 28 U.S.C. § 2254(d)(1). "Under the 'contrary to' clause, a federal habeas court may
27 grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme]
28 Court on a question of law or if the state court decides a case differently than [the] Court has on a

4

set of materially indistinguishable facts." Williams, 529 U.S. at 413; see also Lockyer, 538 U.S. at 72. "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413.

"[A] federal court may not issue the writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Id. at 409.

Petitioner has the burden of establishing that the decision of the state court is contrary to or involved an unreasonable application of United States Supreme Court precedent. Baylor v. Estelle, 94 F.3d 1321, 1325 (9th Cir. 1996). Although only Supreme Court law is binding on the states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court decision is objectively unreasonable. See Clark v. Murphy, 331 F.3d 1062, 1069 (9th Cir.2003); Duhaime v. Ducharme, 200 F.3d 597, 600-01 (9th Cir.1999).

AEDPA requires that we give considerable deference to state court decisions. The state court's factual findings are presumed correct. 28 U.S.C. § 2254(e)(1). We are bound by a state's interpretation of its own laws. Souch v. Schaivo, 289 F.3d 616, 621 (9th Cir.2002), *cert. denied*, 537 U.S. 859 (2002), *rehearing denied*, 537 U.S. 1149 (2003).

II.     Review of Petition

A parole release determination is not subject to all the due process protections of an adversary proceeding. Pedro v. Oregon Parole Board, 825 F.2d 1396, 1398-99 (9th Cir. 1987); see also Greenholtz v. Inmates of Nebraska Penal and Corr. Complex, 442 U.S. 1, 12 (1979) (explaining that due process is flexible and calls for procedural protections that particular situations demand). "[S]ince the setting of a minimum term is not part of a criminal prosecution, the full panoply of rights due a defendant in such a proceeding is not constitutionally mandated,

even when a protected liberty interest exists." Pedro, 825 F.2d at 1399; Jancsek v. Oregon Bd. of Parole, 833 F.2d 1389, 1390 (9th Cir.1987). At a state parole board proceeding, an inmate is guaranteed the following process: 1) the inmate must receive advance written notice of a hearing, Pedro, 825 F.2d at 1399; 2) the inmate must be afforded an "opportunity to be heard," Greenholtz, 442 U.S. at 16; and 3) if the inmate is denied parole, the inmate must be told why "he falls short of qualifying for parole," Id.

"In Superintendent, Mass. Correc. Inst. v. Hill, the Supreme Court held that 'revocation of *good time* does not comport with 'the minimum requirements of procedural due process,' unless the findings of the prison disciplinary board are supported by *some evidence* in the record.' 472 U.S. 445, 454 (1985), *quoting* Wolff v. McDonnell, 418 U.S. 539, 558 (1974)." Sass v. California Board of Prison Terms, 461 F.3d 1123, 1128 (9th Cir.2006) (italics added). The Ninth Circuit has held that this same standard also extends to parole determinations. Hayward v. Marshall, ___ F.3d ____, 2008 WL 43716 *5 (9th Cir.2008), *citing* Irons v. Carey, 505 F.3d 846, 851 (9th Cir.2007), *quoting* Hill, 472 U.S. at 457 ("We have held that 'the Supreme Court ha[s] clearly established that a parole board's decision deprives a prisoner of due process with respect to this interest if the board's decision is not supported by 'some evidence in the record,' or is 'otherwise arbitrary.'"). In assessing "whether a state parole board's suitability determination was supported by 'some evidence' in a habeas case, our analysis is framed by the statutes and regulations governing parole suitability determinations in the relevant state." Hayward, 2008 WL 43716 *5, *quoting* Irons, 505 F.3d at 851. Here, the Court must look to California law and review the record. In reviewing the record and determining whether the "some evidence" standard is met, the Court need not examine the entire record, independently assess the credibility of witnesses, or re-weigh the evidence. Sass, 461 F.3d at 1128.

California law provides that after an inmate has served the minimum term of confinement required by statute, the Board "shall set a release date unless it determines that the gravity of the current convicted offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration for" the prisoner. Cal. Penal Code § 3041(b). "[I]f in the judgment of the panel

6

1  the prisoner will pose an unreasonable risk of danger to society if released from prison," the
2  prisoner must be found unsuitable and denied parole. Cal. Code Regs. tit. 15, § 2402(a). The
3  Board decides whether a prisoner is too dangerous to be suitable for parole by applying factors it
4  has set forth in the California Code of Regulations.

5  To determine whether 'some evidence' supports the state court decision, the test is not
6  whether some evidence supports the reasons cited for denying parole, "but whether some
7  evidence indicates a parolee's release unreasonably endangers public safety." Hayward, 2008 WL
8  43716 *5, *quoting* In re Lee, 143 Cal.App.4th 1400, 1408 (Cal.Ct.App.2006).

9  In denying parole in this case, the Board provided several reasons for its decision: 1) The
10 nature and gravity of the commitment offense; 2) Previous criminal history; 3) Unstable social
11 history; and 4) Opposition by the Fresno County District Attorney's Office. See Answer, Exhibit
12 3 at 86-92. Petitioner disputes this finding and argues that there is no evidence supporting the
13 finding that he currently poses an unreasonable risk of danger to society if released. Review of
14 the Board's decision reveals that the state court decision approving the Board's determination of
15 unsuitability was not unreasonable.

16 The primary factor in the Board's determination was the nature and severity of the
17 commitment offense itself. The Board determined that the offense was carried out in an
18 especially atrocious and heinous manner under 15 C.C.R. § 2402(c)[2]. In support of its
19 determination, the Board made a positive finding as to the factor set forth in § 2402(c)(1)(B), that
20 the offense was carried out in a dispassionate and calculated manner. See Answer, Exhibit 3 at
21 86. In support of this finding, the Board noted that Petitioner armed himself with a knife prior to

---

[2]Pursuant to Title 15, of the California Code of Regulations, Section 2402(c)(1) sets forth circumstances tending to demonstrate unsuitability for parole when the prisoner committed the offense in an especially heinous, atrocious or cruel manner.  The factors to be considered include:
(A) Multiple victims were attacked, injured or killed in the same or separate incidents.
(B) The offense was carried out in a dispassionate and calculated manner, such as an execution-style murder.
(C) The victim was abused, defiled or mutilated during or after the offense.
(D) The offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering.
(E) The motive for the crime is inexplicable or very trivial in relation to the offense.

15 Cal.Code Regs. § 2402(c)(1)(A)-(E).

7

the commission of the offense, and he used the knife to stab the victim numerous times while the victim fought with another. Id. at 86-87.

The Board also found that the motive for the crime was very trivial pursuant to § 2402(c)(1)(E). Id. at 87. This finding is supported by the fact that the stabbing occurred as a result of the clerk's refusal to sell beer to Petitioner's friends because they were underage. Id.

The Board also determined that the offense was carried out in a manner which demonstrated an exceptionally callous disregard for human suffering pursuant to § 2402(c)(1)(D). Id. at 86-87. The Board referred to the amount of pain and suffering Petitioner must have caused the victim by stabbing him in the jugular vein, his right side, and his back repeatedly, then leaving him to expire in the street. Id. In light of the above, the Board reasonably found the offense was carried out in an especially atrocious and heinous manner under 15 C.C.R. § 2402(c).

In addition to the factors of the crime itself, the Board also determined that Petitioner had a previous record of violence pursuant to § 2402(c)(2) and an unstable social history pursuant to § 2402(c)(3). Id. at 88. As to his record of violence, the Board noted Petitioner had failed to profit from society's previous attempts to correct his criminality. Id. Petitioner had been placed on probation and he had served time in Juvenile Hall. Id. His previous record included arrests and/or convictions for throwing a substance at a vehicle, public intoxication, petty theft, malicious mischief, and attempted burglary. Id. During the early term of his incarceration, Petitioner sustained six serious disciplinary violations involving force and violence. Regarding his unstable social history, the Board noted that, in addition to his criminal history involving force and violence directed towards others, Petitioner previously had been affiliated with gangs, both in and out of prison. Id. at 62, 88. Petitioner also concedes he had a turbulent upbringing in a broken home, see Petition at 16, and he had a history of abusing alcohol and drugs such as marijuana, PCP, and LSD. See Exhibit 3 at 88.

The Board also considered the opposition of the Fresno County District Attorney's Office. Id. at 90. The agency was opposed to a grant of parole due to the heinous nature of the offense. The statement in opposition was properly considered pursuant to Cal. Penal Code § 3042

and 15 C.C.R. § 2402(b).

The Board also considered the most recent psychological report which was favorable. Id.a at 89. The psychologist noted that in his opinion Petitioner currently posed a less than average risk of dangerousness if released to the community. Id. However, the Board also noted the reservation stated by the psychologist:

> [Petitioner has] not had the experience of living as a law-abiding citizen in the community where the temptations are greater and the structure considerably less than prison. The latter is the only factor that would raise any doubt about his ability to sustain his new mindset and behavioral pattern in the community.

Id.

The Board also considered the various circumstances demonstrating suitability pursuant to § 2402(d). The Board noted Petitioner had upgraded educationally and vocationally. Id. at 34, 88. He had not committed any disciplinary violations within the most recent review period, and he had not sustained a serious disciplinary violation since 1989. Id. at 89. As noted above, the Board also considered the favorable psychological report. Id. It also noted Petitioner had very good parole plans. Id. He has a primary residence planned as well as a backup, and he has two employment offers and possesses numerous marketable skills. Id. at 33-34.

Nevertheless, the Board found these positive factors, while promising for a possible future grant of parole, did not outweigh its determination that Petitioner remained an unreasonable risk of danger to society if released. The gravity of Petitioner's offense, his prior record of violence, and his substance abuse issues, despite his positive gains to date, were more indicative of a danger to the public. Petitioner stated he had abused alcohol in the past and was inebriated during the commission of the offense. He admitted that he "had never lived a life sober before." Id. at 27. The psychologist noted that drinking alcohol and associating with gangs were serious risk factors for Petitioner. Id. at 65. He recommended that Petitioner continue to program in a positive manner and attend all self-help and supportive programs that are available, and that "he continue his affiliation with AA and NA and that he seek out counseling to help him with his adjustment to a lifestyle that he is to be accustomed to." Id. at 66-67. Unfortunately, Petitioner was dropped from the AA program five or six months prior to the hearing because he had failed to

attend one day. Id. at 57. The Board expressed deep concern over this fact, given the circumstances of his offense, stating, "[Y]ou know, it's very important to participate because of your . . . circumstance of the commitment offense." Id. at 58. The Board further recommended that Petitioner "continue with your same programming" and "[g]et yourself back in AA." Id. at 91. Given the facts of the offense and Petitioner's substance abuse history, the Board's determination that Petitioner continued to pose an unreasonable risk of danger to the public if released was understandable. This Court cannot conclude that the state court rejection of Petitioner's claim - that the Board's determination was not supported by some evidence - was unreasonable.

The Court also finds Petitioner's remaining claims to be without merit. While it is true that in Biggs v. Terhune, 334 F.3d 910, 916-17 (9th Cir.2003), the Ninth Circuit stated that "[a] continued reliance in the future on an unchanging factor, the circumstance of the offense and conduct prior to imprisonment, runs contrary to the rehabilitative goals espoused by the prison system and could result in a due process violation," this is not the situation here. The Board relied on not just the commitment offense and his conduct prior to imprisonment, as discussed above.

Petitioner's challenge to the Board's procedures is also unavailing. It is apparent the Board considered all relevant evidence in this case and carefully balanced and assessed the various factors in determining Petitioner continued to pose an unreasonable risk to public safety.

**RECOMMENDATION**

Based on the foregoing, it is HEREBY RECOMMENDED that:

1. The Petition for Writ of Habeas Corpus be DENIED; and

2. The Clerk of Court be DIRECTED to enter judgment for Respondent.

This Findings and Recommendation is submitted to the Honorable Anthony W. Ishii, United States District Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California.

Within thirty (30) days after being served with a copy of this Findings and Recommendation, any party may file written objections with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and

1  Recommendation." Replies to the Objections shall be served and filed within ten (10) court days
2  (plus three days if served by mail) after service of the Objections. The Finding and
3  Recommendation will then be submitted to the District Court for review of the Magistrate Judge's
4  ruling pursuant to 28 U.S.C. § 636 (b)(1)(C). The parties are advised that failure to file objections
5  within the specified time may waive the right to appeal the Order of the District Court. Martinez
6  v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

    IT IS SO ORDERED.

    Dated:   **March 25, 2008**                    /s/ **Gary S. Austin**
                                                   UNITED STATES MAGISTRATE JUDGE